ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
KEITH M. STAUB (State Bar No. 137909)
Assistant United States Attorney
    Room 7516 Federal Building
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-7423
    Facsimile: (213) 894-7819
    Email: Keith. Staub@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DAVID ANDERSON et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CHRISTOPHER COX et al.,<br><br>    Defendants. | No. SACV 10-31 JVS (MLGx)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  July 19, 2010<br>Time:  1:30 p.m.<br><br>Hon. James V. Selna |

    PLEASE TAKE NOTICE that Federal Defendants, CHRISTOPHER COX, MARY L. SCHAPIRO, CYNTHIA A. GLASSMAN, PAUL S. ATKINS, ROEL C. CAMPOS, ANNETTE L. NAZARETH, TROY A. PAREDES, LUIS A. AGUILAR, ELISSE B. WALTER, and KATHLEEN L. CASEY ("Defendants"), by and through their counsel of record, the United States Attorney for the Central District of California, will bring on for hearing a Motion to Dismiss plaintiffs' Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on July 19, 2010 at 1:30 p.m. or as soon thereafter as counsel may be heard, in the courtroom of the Honorable James V. Selna, at 411 West Fourth Street, Santa Ana,

California.

The motion is made pursuant to Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6) on the following grounds:

(1) This Court lacks jurisdiction over the claim for declaratory relief.

(2) Plaintiffs' complaint fails to state a claim for declaratory relief.

(3) Plaintiffs' complaint fails to state a claim for constitutional violations against the Defendants in their individual capacities; and

(4) Defendants are protected by qualified immunity.

This motion is based upon this Notice of Motion and Motion to Dismiss, the attached Memorandum of Points and Authorities, all pleadings, papers filed in this action, and any oral argument which may be presented at the hearing of this motion.

<u>Statement Re Compliance With Local Rule 7-3</u>

Defendants complied with Local Rule 7-3 on May 13, 2010.

Dated: May 28, 2010                    Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division


_____/s/_____
KEITH M. STAUB
Assistant United States Attorney

Attorneys for Defendants

# **TABLE OF CONTENTS**

I. **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. **FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. **ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A. **Plaintiffs' Claim for Declaratory Relief Should be Dismissed Because it is Either Barred by Sovereign Immunity or Brought Against the Wrong Defendants** . . . . . . . . . 5

    B. **Plaintiffs' Complaint Should Be Dismissed in its Entirety Because Plaintiffs Have Failed to State a Plausible Claim** . . . . . . 6

    C. **Plaintiffs' Bivens Claim Should Be Dismissed Because Plaintiffs Have Not Alleged that Defendants Were Either Personally Involved in, or Caused Plaintiffs to Be Subjected to, a Constitutional Deprivation** . . . . . . . . . . . . . . . . . 9

    D. **The Complaint Fails to Set Forth Facts Sufficient to Overcome Defendants' Qualified Immunity** . . . . . . . . . . . . . . . . 10

IV. **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Ashcroft v. Iqbal,
    129 S.Ct. 1937 (2009) .............................. 6, 7, 9, 10

Barrens v. Harrington,
    152 F.3d 1193 (9th Cir. 1998) .............................. 9

Bibeau v. Pacific Northwest Research Foundation,
    188 F.3d 1105 (9th Cir. 1999) ............................. 10

Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,
    403 U.S. 388 (1971) ........................................ 9

Board of Regents v. Roth,
    408 U.S. 564 (1972) ....................................... 12

Booth v. Churner,
    532 U.S. 731 (2001) ........................................ 9

Butz v. Economou,
    438 U.S. 478 (1978) ........................................ 9

Cato v. United States,
    70 F.3d 1103 (9th Cir. 1995) ............................... 6

Committee for Immigrant Rights of Sonoma County v. County of Sonoma,
    644 F.Supp.2d 1177 (N.D. Cal. 2009) ........................ 5

Erickson v. United States,
    67 F.3d 858 (9th Cir. 1995) ............................... 13

Gilbert v. DaGrossa,
    756 F.2d 1455 (9th Cir. 1985) .............................. 6

Greenwood v. FAA,
    28 F.3d 971 (9th Cir. 1994) ............................... 13

Harlow v. Fitzgerald,
    457 U.S. 800 (1981) ....................................... 11

Hodge v. Dalton,
    107 F.3d 705 (9th Cir. 1997) ............................... 5

Ivey v. Bd. of Regents of the University of Alaska,
    673 F.2d 266 (9th Cir. 1982) ............................... 9

Johnson v. Duffy,
    588 F.2d 740 (9th Cir. 1978) ............................... 9

<u>Lucero v. Hart</u>,
    915 F.2d 1367 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Marquez v. Gutierrez</u>,
    322 F.3d 689 (9th cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Mitchell v. Forsyth</u>,
    472 U.S. 511 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Pearson v. Callahan</u>,
    129 S.Ct. 808 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Pellegrino v. United States</u>,
    73 F.3d 934 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Peterson V. United States Dep't of Interior</u>,
    899 F.2d 799 (9th Cir.), <u>cert. denied</u>, 498 U.S. 1003 (1990) . . . . 12, 13

<u>Romero v. Kitsap County</u>,
    931 F.2d 624 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Rumbles v. Hill</u>,
    182 F.3d 1064 (9th Cir. 1999), *cert. denied*, 528 U.S. 1074 (200) . . . 9

<u>Saucier v. Katz</u>,
    533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>SEC v. CMKM Diamonds, Inc.</u>,
    No. CV 08-00437 (D.Nev) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Swanson v. Babbit</u>,
    3 F.3d 1348 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Terrell v. Brewer</u>,
    935 F.2d 1015 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Wolfe v. Strankman</u>,
    392 F.3d 358 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**<u>FEDERAL STATUTES</u>**

F.R.C.P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

F.R.C.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 11

U.S.C. 78d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs David Anderson, Nelson L. Reynolds, Sheila Morris, Patrick Cluney, Robert Hollenegg, Allan Treffry and Reece Hamilton (Hereinafter referred to as "Plaintiffs"), all of whom allegedly owned shares of stock in CMKM Diamonds, Inc. (Complaint, ¶¶ 6-12), filed a complaint for declaratory judgment and violation of civil rights against Defendants CHRISTOPHER COX, MARY L. SCHAPIRO, CYNTHIA A. GLASSMAN, PAUL S. ATKINS, ROEL C. CAMPOS, ANNETTE L. NAZARETH, TROY A. PAREDES, LUIS A. AGUILAR, ELISSE B. WALTER, and KATHLEEN L. CASEY ( Complaint, ¶ 13).  Defendants are current and former Chairmen and/or Commissioners of the Securities and Exchange Commission ("Commission" or "SEC") who have served since early 2006.  The Chairman and Commissioners together constitute the agency head who accomplishes the agency's mission in conjunction with the staff in Divisions and Offices beneath them.  See 15 U.S.C. 78d (Section 4 of the Securities Exchange Act of 1934).

## II. FACTUAL BACKGROUND

Because Defendants are moving to dismiss and must, for purposes of this motion, accept the allegations of the Complaint as true, the relevant facts are those alleged in the Complaint.  The allegations that appear to relate to Defendants and the claims against them are as follows.

CMKM was formed in 2004 through a merger of other companies, and within a few months of its formation, it had amended its Articles of Incorporation to authorize the issuance of 800,000,000,000 common shares with a par value of $0.0001.  Complaint ¶¶ 15-16. In 2005, the company was reinstated to a public reporting status, but the SEC imposed a temporary suspension of trading of CMKM stock based on concerns over the adequacy of publicly available information, and then brought an administrative proceeding alleging CMKM had

failed to file required reports. Complaint ¶ 18-19. In July 2005, an SEC administrative law judge found the facts to be as alleged by the SEC, and in October 2005, CMKM started to wind up its affairs by selling its assets. Complaint ¶¶ 21-23. Also on October 28, 2005, the SEC entered an order de-registering CMKM. Complaint ¶ 23. At that time, CMKM had 703,518,875,000 shares of common stock issued and outstanding. Complaint ¶ 23. A "Task Force" that was involved in liquidating the CMKM assets stated in November 2005 that "the number of naked short shares is potentially as high as 2 Trillion shares." Complaint ¶ 24.[1]

The Complaint later alleges that from "June 1, 2004 through October 28, 2005 a total of 2.25 Trillion 'phantom' shares of CMKM Diamonds Inc, was sold into the public market . . . . The sales of the majority of such shares were at all times known to the Securities and Exchange Commission, including Defendants herein." Complaint ¶ 31. The Complaint also alleges that the SEC and the United States Department of Justice (with alleged assistance from the Department of Homeland Security) used CMKM to "trap[] a number of widely disbursed persons who were believed to be engaged in naked short selling of CMKM Diamonds Inc. stock" by taking actions related to the management of the company. Complaint ¶ 32. Those actions included facilitating settlement conferences between CMKM and persons who had engaged in naked short selling. Complaint ¶ 32(d). In the settlement, which was apparently between CMKM and the short sellers, the short sellers "promised to pay negotiated amounts to a frozen trust for disbursal at a later time" in return for a promise that the United States government would not prosecute them. Complaint ¶ 34.

Plaintiffs also allege that other moneys were "collected for the benefit of the

---

[1] The Complaint does not define or explain naked short selling, and resolution of this motion does not require definition of that practice. However, some general information on naked short selling is available at http://www.sec.gov/spotlight/keyregshoissues.htm.

3

shareholders of CMKM Diamonds, Inc. from the Depository Trust & Clearing Corporation, from the United States Government, and from the sale of additional assets" (apparently assets of CMKM). Complaint ¶ 35. These assets allegedly "have also been placed in a trust or are otherwise now held in trust by the Depository Trust & Clearing Corporation ["DTCC"] and the United States Treasury." Complaint ¶ 35. The Complaint does not allege why the DTCC or the United States government would have put money in a trust for CMKM shareholders or why the DTCC or Treasury Department would hold assets from CMKM in trust.[2] It is also not clear whether the Complaint is alleging that these funds are in the same trust as the alleged funds from naked short sellers.

Without specifying what funds it is discussing, the Complaint continues by alleging that the SEC "reserved unto itself the sole and absolute discretion to determine when moneys collected pursuant to the scheme set forth above would and could be released for distribution." Complaint ¶ 36. Plaintiffs also allege that "[d]emand for release of said moneys has been repeatedly presented to the Securities and Exchange Commission without result." Complaint ¶ 37. Allegedly, agents of the SEC and the Department of Justice have said the money would be released soon, but allegedly the governmental agents knew those statements, made "at the specific direction of the named Defendants," were false. Complaint ¶ 37. The Complaint then concludes that "withholding distribution of said moneys, without compensation and without due process of law, amount[s] to a taking of the property of the individual Plaintiffs." Complaint ¶ 37.

---

[2] As is evident from public filings, the SEC has brought a civil enforcement action against CMKM and other related persons alleging that CMKM officers oversaw a complex scheme to issue and sell unregistered CMKM stock and to manipulate CMKM's stock price and volume through false statements from January 2003 through May 2005. SEC v. CMKM Diamonds, Inc., No. 2:08-CV-00437 (D. Nev.). The SEC did not bring any claims against alleged naked short sellers. While the SEC has obtained judgments requiring substantial payments of disgorgement and civil penalties against several defendants, Plaintiffs never mention this action in the Complaint or otherwise suggest the funds at issue were obtained through the SEC's lawsuit.

4

The Complaint purports to state two causes of action, both against all Defendants. First, the Complaint seeks a declaration that Defendants wrongfully "cause[d] certain acts and omissions to proceed in such manner" to "prevent the distribution of moneys held for the benefit of Plaintiffs," and that their actions caused Plaintiffs "to be deprived of property without just compensation and without due process of law." Complaint ¶ 53. Second, the Complaint alleges that Defendants violated Plaintiffs' "Fifth Amendment right to be secure in their property, free from taking without just compensation and without due process of law," and that Defendants' actions caused Plaintiffs and all persons similarly situated to suffer damages "in excess of 3.87 Trillion Dollars." Complaint ¶¶ 56, 58.

## III. ARGUMENT

### A. Plaintiffs' Claim for Declaratory Relief Should Be Dismissed Because it Is Either Barred by Sovereign Immunity or Brought Against the Wrong Defendants.

Plaintiffs seek declaratory relief from Defendants in both their official and individual capacities. Complaint ¶¶ 52-54. Plaintiffs seek a declaratory judgment that "declares the validity of the contentions of the parties set forth in Paragraphs 52 to 54 . . . ." Complaint, Prayer at p. 19. For the reasons stated below, the court lacks subject matter jurisdiction to the extent the claim is against Defendants in their official capacities and plaintiffs fail to state a claim for declaratory relief to the extent the claim is against Defendants in their individual capacities.

Claims against the Defendants in their official capacities are barred by sovereign immunity. "The doctrine of sovereign immunity applies to federal agencies and to federal employees acting within their official capacities." Hodge v. Dalton, 107 F.3d 705, 707 (9th Cir. 1997); see also Committee for Immigrant Rights of Sonoma County v. County of Sonoma, 644 F.Supp.2d 1177, 1192-93 (N.D. Cal. 2009). A plaintiff suing the United States bears the burden of showing

5

an unequivocal waiver of sovereign immunity.  <u>Cato v. United States</u>, 70 F.3d 1103, 1107 (9th Cir. 1995) (citation omitted); <u>Gilbert v. DaGrossa</u>, 756 F.2d 1455, 1458-59 (9th Cir. 1985) (holding that a suit against officers and employees of the United States in their official capacities is essentially a suit against the United States and is barred by sovereign immunity).  Plaintiffs have failed to identify a waiver that would allow their claim for declaratory relief to proceed.  Thus, this Court should dismiss that claim because it lacks subject matter jurisdiction over it.

To the extent Plaintiffs' claims against Defendants in their individual capacities seek a court order compelling official Commission action, they have failed to state a claim because they have named the wrong defendants.  Defendants – in their individual capacities – are not parties from whom a declaratory judgment (or any other equitable relief) can be obtained.  There is no basis in the law for a plaintiff to seek equitable relief from a government official, in his or her individual capacity, as redress for alleged government violations of constitutional rights because the Defendants cannot take government action in their individual capacities.  <u>See, e.g.</u>, <u>Wolfe v. Strankman</u>, 392 F.3d 358, 360 n.2 (9th Cir. 2004) (declaratory and injunctive relief only available in official capacity suit; it is not available in lawsuit against individual government employees in their personal capacities).  Thus, this Court also should dismiss plaintiffs' declaratory relief claim for failure to state a claim.

**B.     Plaintiffs' Complaint Should be Dismissed In its Entirety Because Plaintiffs Have Failed to State a Plausible Claim.**

The entire Complaint (to the extent it is not dismissed for lack of jurisdiction or because it names the wrong defendants) should be dismissed because it lacks "facial plausibility"; that is, it does not, as required by <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949, 1952 (2009), contain factual allegations "sufficient to plausibly suggest" that Defendants took steps to prevent Plaintiffs from receiving funds in which Plaintiffs had a property interest.

6

In <u>Iqbal</u>, the Supreme Court clarified that in all federal court cases, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Iqbal</u>, 129 S. Ct. at 1949 (internal citations omitted).  Instead, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u>

The allegations that were dismissed in <u>Iqbal</u> for failure to satisfy a plausibility standard are analogous to the allegations at issue here.  In <u>Iqbal</u>, the plaintiff alleged that the defendants, the former Attorney General and the director of the Federal Bureau of Investigation "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'" <u>Id.</u> at 1951.  The plaintiff further alleged that the Attorney General was the "'principal architect' of this invidious policy," and that the FBI director was "'instrumental' in adopting and executing it." <u>Id.</u>  The Court found that these allegations were nothing more than "a 'formulaic recitation of the elements' of a constitutional discrimination claim." <u>Id.</u>  Consequently, "the allegations are conclusory and not entitled to be assumed true." <u>Id.</u>  That is, they do not "contain facts plausibly showing that petitioners purposefully adopted a policy of classifying post-September 11 detainees as 'of high interest' because of their race, religion, or national origin." <u>Id.</u> at 1952.

In this case, Plaintiffs' allegations similarly do not contain any facts that plausibly show that there is a trust fund containing funds from naked short sellers and others that was gathered to benefit CMKM shareholders.  With respect to the key allegation that there was "a settlement with the illegitimate brokers, dealers, market makers, hedge funds, and other persons and entities that had engaged in

7

naked short selling," the complaint does not identify a single party to the settlement (it does not even say whether the Commission was a party) or provide anything other than the most general terms – persons who engaged in naked short selling agreed to pay negotiated amounts in return for a promise of no prosecution. Complaint ¶ 34.

In addition, Plaintiffs do nothing to identify their purported rights under that alleged agreement. They say only that "other moneys have been collected for the benefit of the shareholders of CMKM Diamonds, Inc. from the Depository Trust & Clearing Corporation, from the United States Government, and from the sale of additional assets including consent to enter into joint venture agreements with other companies holding mineral claims in Saskatchewan, Canada." Id. at ¶ 35. Plaintiffs do not say why, when, or how the DTCC and the United States collected money for the CMKM shareholders or explain why they think the money was collected.

The Complaint also does not identify how or when Plaintiffs were deprived of any funds. To the contrary, the Complaint alleges that "the Securities and Exchange Commission reserved unto itself the sole and absolute discretion to determine when moneys collection pursuant to the scheme set forth above would and could be released for distribution." Complaint ¶ 36. The Complaint also refers to statements that agents of the SEC supposedly made promising to release money to CMKM shareholders without providing the most basic facts about those statements such as the context in which they were made, who made them, and when they were made. Complaint ¶ 37. The Complaint also alleges that the Defendants directed their agents to make the statements without providing a single fact to support that contention. Complaint ¶ 37.

The vague and conclusory facts alleged by Plaintiffs do not allow the Court to draw any reasonable inference that points to any liability of Defendants; the allegations provide nothing more than "a sheer possibility that a defendant has

acted unlawfully" (and they may not provide even that).  See Iqbal, 129 S.Ct. at 1949.  Consequently, the Complaint does not satisfy the pleading requirements of Rule 8(a)(2) and must be dismissed.

**C.   Plaintiffs' Bivens Claim Should Be Dismissed Because Plaintiffs Have Not Alleged that Defendants Were Either Personally Involved in, or Caused Plaintiffs to Be Subjected to, a Constitutional Deprivation.**

Even if Plaintiffs' had satisfied the Rule 8 pleading requirements, their second cause of action would have to be dismissed.  In that cause of action, Plaintiffs seek damages from Defendants on a constitutional tort theory of recovery under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  In a Bivens action, the plaintiff *must allege facts, not simply conclusions*, that show that the defendant was personally involved in the deprivation of his constitutional rights.  Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)(emphasis added).  Vague and conclusory allegations of official participation in constitutional violations are not entitled to be assumed to be true, and thus, not sufficient to withstand a motion to dismiss.  See Ashcroft, et al. v. Iqbal, 129 S.Ct. 1937, 1951 (2009); Ivey v. Bd. of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

A defendant is not liable under Bivens unless the facts establish that the defendant had a "personal involvement" in the alleged constitutional deprivation, or that there was a "causal connection" between the defendant and the alleged constitutional deprivation.  See Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978) (claims brought pursuant to 42 U.S.C. § 1983);[3] Pellegrino v. United States, 73 F.3d 934, 936 (9th Cir. 1996) (Bivens liability is premised on proof of direct

---

[3] "Actions under § 1983 and those under Bivens are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens." Rumbles v. Hill, 182 F.3d 1064, 1069 (9th Cir. 1999), *cert. denied*, 528 U.S. 1074 (2000), *abrogated on other grounds*, Booth v. Churner, 532 U.S. 731 (2001); Butz v. Economou, 438 U.S. 478, 500-02 (1978) (liability of federal officials under Bivens same as liability of state and municipal officials under § 1983).

9

personal responsibility).

Moreover, respondeat superior, or supervisory liability, is not applicable in an individual capacity suit under Bivens.  See Iqbal, 129 S.Ct. at 1949; Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991).  In Iqbal, the Supreme Court rejected the notion that a supervisor's mere "knowledge and acquiescence in their subordinates' [conduct]" could demonstrate the supervisor's violation of the Constitution.  See Iqbal, 129 S.Ct. at 1949.  Absent vicarious liability, a government employee's liability must stem from his or her own misconduct; thus, "purpose rather than knowledge is required to impose Bivens liability" on both subordinates and supervisors.  Id.; see also Bibeau v. Pacific Northwest Research Foundation, 188 F.3d 1105, 1114 (9th Cir. 1999).

Notably missing from Plaintiffs' Complaint are any factual allegations detailing Defendants' direct involvement in the general matters asserted against the SEC.  Nowhere do Plaintiffs contend in anything other than the most conclusory fashion that these high level SEC Chairman and Commissioners said, wrote, directed or instructed any of the conduct alleged, nor do Plaintiffs allege specific facts demonstrating that Defendants were aware of, or acquiesced in, the alleged conduct.

Accordingly, Plaintiffs' Bivens claim must be dismissed as there are no factual allegations showing that Defendants were personally involved in any alleged constitutional violation.

**D.    The Complaint Fails to Set Forth Facts Sufficient to Overcome Defendants' Qualified Immunity.**

Even assuming that the Complaint set forth facts sufficient to establish that Defendants violated Plaintiffs' constitutional rights, each Defendant is entitled to

///

///

///

10

qualified immunity.[4] Government officials are shielded from civil damage liability if their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1981); Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991). The Supreme Court has repeatedly underscored the importance of resolving qualified immunity questions at the earliest possible stage in litigation so that the costs and expenses of trial are avoided where the defense is dispositive. Saucier v. Katz, 533 U.S. 194, 200 (2001). Indeed, the defense of qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. Id. (citing Mitchell v. Forsyth, 472 U.S. 511 (1985)).

In Saucier, the Court established a two-part inquiry in determining whether qualified immunity applies: (1) whether taken in the light most favorable to the plaintiff, the facts as alleged show the officer's conduct violated a constitutional right; and (2) whether the constitutional right in question was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he/she confronted. Saucier, 533 U.S. at 201; Marquez v. Gutierrez, 322 F.3d 689, 692 (9th Cir. 2003). The Supreme Court recently held that while the sequence of the two-part inquiry set forth above in Saucier is often appropriate, it is no longer mandatory; thus, the Court may grant qualified immunity if *either* of the two prongs of the Saucier test are not met. See Pearson v. Callahan, 129 S.Ct. 808, 818 (2009).

This case is one in which Defendants can easily establish that the first part of

---

[4] Because the qualified immunity determination requires consideration of whether the facts alleged state a constitutional violation, raising qualified immunity is entirely consistent with a motion to dismiss under Rule 12(b)(6) for failure to state a claim on which relief can be based. As the Supreme Court has recently stated, "whether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded. In that sense the sufficiency of respondent's pleadings is both 'inextricably intertwined with,' . . . and 'directly implicated by,' . . . the qualified immunity defense." Iqbal, 129 S. Ct. 1946-47 (citations omitted).

11

the test is not satisfied, so the Saucier order can be followed. The Complaint alleges that Defendants denied Plaintiffs "their Fifth Amendment right to be secure in their property, free from taking without just compensation and without due process of law" by withholding distribution of money. Complaint ¶¶ 38-39. But Plaintiffs have not shown that Defendants violated a constitutional right because Plaintiffs have not alleged facts sufficient to show that they have a protected property interest in that alleged money.

> In addressing property interests, the Supreme Court has stated:
>> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Property rights are not created by the Constitution, but are defined by independent sources such as state law, statutes, ordinances, regulations or express and implied contracts. Id.; Lucero v. Hart, 915 F.2d 1367, 1370 (1990). Further, if a right has not vested, it is not a cognizable property interest. Peterson v. United States Dep't of Interior, 899 F.2d 799, 807 (9th Cir.), cert. denied, 498 U.S. 1003 (1990).

Peterson is instructive because it shows that a claim based on an expectation – even an eminently reasonable expectation – that a person will obtain funds from the government is not a property interest. In Peterson, several California public water agencies asked the federal court to declare unconstitutional a provision in the Reclamation Reform Act of 1982, which they claimed interfered with their rights to receive subsidized water from federal reclamation projects for certain lands. Plaintiffs made two arguments to establish a constitutionally-protected property right. First, they argued that such a right was implicit in contracts they had with the federal government. Second, they contended that they had a "reasonable investment-backed expectation to receive water at subsidized rates" even if the

12

right was not included within the contract. <u>Peterson</u>, 899 F.2d at 812. The Ninth Circuit found that the contract between the plaintiffs and the federal government was insufficient to establish a property right, so it turned to the second argument. <u>Id</u>. at 811. The court rejected the plaintiffs' second argument, noting that the plaintiffs did not have a property interest just because they expected to receive certain funds from the government and made investments based on that expectation. <u>Id</u>. at 813.

Moreover, numerous cases illustrate the proposition that an individual has no property interest in a particular benefit where a government agency retains discretion to grant or deny the benefit. <u>See, e.g.</u>, <u>Erickson v. United States</u>, 67 F.3d 858, 862 (9th Cir. 1995) (under due process clause, doctors had no property interest in continued participation in Medicare or Medicaid); <u>Greenwood v. FAA</u>, 28 F.3d 971, 976 (9th Cir. 1994) (where annual renewal of pilot examiner designation was left to the discretion of the FAA, plaintiff had no entitlement); <u>Swanson v</u>. <u>Babbit</u>, 3 F.3d 1348, 1353-54 (9th Cir. 1993) (undertakings clause, no vested right to obtain patent to mining claim upon filing of claim where agency had discretion to review claim).

Here, Plaintiffs fail to establish a constitutionally-protected property interest and thus their Fifth Amendment claim (under either the Due Process Clause or the Takings Clause) is not cognizable. Plaintiffs attempt to base their property interest on a purported promise from unidentified entities engaged in naked short selling who allegedly "promised to pay negotiated amounts to a frozen trust for disbursal at a later time" in exchange for "a U.S. Government promise of no prosecution" for naked short selling. Complaint ¶ 34. This allegation illustrates that Plaintiffs themselves have not entered into a contract and have not obtained any enforceable rights. Indeed, Plaintiffs allege that the Commission has "the sole and absolute discretion" to determine when to disburse the purported pool of money. Complaint ¶ 36. As discussed above, individuals have no vested property interest in a

particular benefit where a government agency retains discretion to grant or deny the benefit.

Because Plaintiffs have not alleged that they have a vested property interest in the alleged trust fund at issue, they have not made allegations sufficient to show that Plaintiffs violated a constitutional right.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' action must be dismissed in its entirety.

Dated: May 28, 2010

                      Respectfully submitted,

                      ANDRÉ BIROTTE JR.
                      United States Attorney
                      LEON W. WEIDMAN
                      Assistant United States Attorney
                      Chief, Civil Division

                            /s/
                      KEITH M. STAUB
                      Assistant United States Attorney

                      Attorneys for Defendants